UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MELVIN L. WASHINGTON, an individual, and MASUMI WASHINGTON, an individual,<br><br>                Plaintiffs,<br><br>        vs.<br><br>NATIONAL CITY MORTGAGE COMPANY, an Ohio Corporation; PNC BANK, NATIONAL ASSOCIATION, a Pennsylvania Association; KONDAUR CAPITAL CORPORATION, a California corporation; FCI LENDERS SERVICES, INC., a California Corporation; SONOCA ONE, a California Limited Liability Company; WACHTER INVESTMENTS INC., a California Corporation; RICHARD B. WACHTER, an individual; BRIAN E. ROONEY, an individual; GREGORY G. STEIGER, an individual; JOANNE STEIGER, an individual; and DOES 1-100, inclusive,<br><br>                Defendants. | Case No:  C 10-5042 SBA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Docket 4 |

Plaintiffs Melvin and Masumi Washington allege that they were defrauded by their lenders in connection with the financing of their home in San Francisco.  On November 8, 2010, Plaintiffs filed the instant action against Defendant Sonoca One, LLC ("Sonoca"), among others, alleging federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., along with various supplemental state law causes of action.  The parties are presently before the Court on Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction.  Specifically, Plaintiffs seek to enjoin Sonoca from foreclosing on their home.  Having read and considered the record and the papers submitted by the

parties, the Court DENIES Plaintiffs' motion.  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court adjudicates the motion without oral argument.

## I. BACKGROUND

### A. FACTUAL SUMMARY

#### 1. Initial Construction Loan

On October 26, 2004, Plaintiffs obtained a construction loan from National City Mortgage Company ("National") in the amount of $485,000 to construct a home at 96 Alpha Street, San Francisco, California.  Id. ¶ 13 & Ex. A.  The loan is memorialized in an Adjustable Rate Note ("the Note"), which specified that the interest rate for the first 36 months (referred to as the "Interest Only Period") would remain fixed at 5.75% for 36 months with monthly payments of $2,323.96.  Id. Ex. A at 1. After the expiration of the Interest Only Period, i.e., July 1, 2008, Plaintiffs were to begin paying both principal and interest.  Id.  The interest rate became variable, based on the twelve-month LIBOR (London Interbank Offered Rate) index, plus 2.25%.  Id. at 2.

The Note included a Construction/Permanent Addendum to Adjustable Rate Note ("Addendum").  Compl. Ex. A.  The Addendum indicates that the deadline for completing construction was June 13, 2005, and that within 30 days of that date, Plaintiffs could "lock in" the current interest rate.  Id.  The Addendum further provided that "upon completion of the Improvements, Borrower will execute a Modification Agreement…. Should the Modification Agreement not be executed for any reason, the interest rate on unpaid principal being charged shall be increased to the higher of the Capped Rate as defined in the Capped Rate Floating Rate Agreement or 11.75%."  Id.[1]

#### 2. Loan Modification Agreement

On March 2, 2008, Plaintiffs received a letter from National congratulating them on the completion of their home, and informing them that the Note required "'the execution of

---

[1] On August 7, 2007, Plaintiffs obtained a second loan from Wachter Investments, Inc., in the amount of $280,000.  Compl. ¶ 16 & Ex. C.  The details of that transaction are not at issue in the instant motion.

a Loan Modification Agreement because [their] loan terms have changed since [their] original closing.'" Compl. ¶ 20.  National's letter warned that if Plaintiffs did not execute the loan modification, their loan "'may start the Revert process in which [their] loan will be defaulted and will be set up at the default rate of 11.75%.'"  Id.  Plaintiffs advised National that they could not afford such a high interest rate, and that they wanted to maintain the original terms of the Note.  Id.  National responded that Plaintiffs' only options were to either agree to a two-year balloon loan or be foreclosed upon.  Id.  Seeing no choice, Plaintiffs agreed to the loan modification.  Id.  Plaintiffs subsequently requested National to reverse the modification so that they could obtain a 30-year fixed loan, but were told that their loan was packaged and would be easier to sell with the shorter terms.  Id.

On June 16, 2008, Plaintiffs executed a Loan Modification Agreement ("Modification"), which was deemed effective as of February 21, 2008.  Sowards Decl. Ex. 3.  Under the terms of the Modification, the interest rate became subject to adjustment as of May 1, 2008, based on "the Prime Rate as published by the Wall Street Journal[.]"  Id. § 4.  The Modification further specified that the full amount of the unpaid principal, $483,500, would be due and payable on the Maturity Date of March 10, 2010.  Id. § 3(A).

### 3. Loan Sold to Kondaur

In September 2008, Plaintiffs were notified that their Note had been sold to Kondaur Capital Corporation ("Kondaur"), and were instructed to make their mortgage payments to Kondaur.  Id. ¶ 21.  A few months later in January 2009, Plaintiffs received a letter from Kondaur informing them that Kondaur had been assigned the ownership and servicing rights under the Note.  Pls.' Reply Ex. 2; Compl. ¶ 22.  On a date not specified in the Complaint, a broker purporting to represent Kondaur appeared at one of the Plaintiff's place of work unannounced to induce him or her to relinquish the keys to their home in exchange for a loan modification or forgiveness agreement.  Compl. ¶ 22.  The broker told Plaintiff that his family home had been foreclosed upon, even though they were not late on their payments.  Id.  He stated that their loan was "underwater" and that they could "walk

away" by giving the keys to him.  Id.  Plaintiff instructed the broker to leave and told him he had no interest in walking away from his property.  Id.

On or about September 17, 2009, Plaintiffs received a Notice of Assignment, Sale or Transfer of Servicing Rights letter from Kondaur informing them that effective October 3, 2009, all mortgage payments were to be made to FCI Lender Services, Inc. ("FCI"), in Anaheim, California.  Id. ¶ 27.  Plaintiffs received a similar letter from FCI on or about October 9, 2009.  Id. ¶ 28.  In December 2009, FCI informed Plaintiff that Sonoca now owned their Note.  Id.  ¶ 29.

Plaintiffs did not pay off the principal due on the Note by the March 1, 2010 Maturity Date.  Sowards Decl. ¶ 5.  As a result, Sonoca commenced non-judicial foreclosure proceedings.  Id.   The original sale date was scheduled for October 14, 2010, but was postponed to October 28, then November 12, and then November 23.  Defs.' Opp'n at 3 n.2.  By stipulation, Sonoca agreed to delay the sale date until December 16, 2010, to allow the parties sufficient time to brief the instant motion.  Dkt. 9, 10.

### B.   PROCEDURAL HISTORY

On November 8, 2010, Plaintiffs filed a Complaint against National, Kondaur, Sonoca, Wachter and FCI, among others, based on their allegedly unlawful, fraudulent and unfair predatory real estate practices.  The Complaint alleges sixteen causes of action, styled as follows:  (1) Declaratory Relief; (2) Injunctive Relief; (3) Determine Nature, Extent and Validity of Lien under Cal. Comm. Code § 9313; (4) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; (5) Violation of TILA; (6) Violation of RESPA; (7) Violation of Cal. Civ. Code §§ 1918.5-1921.1920; (8) Violation of Cal. Civ. Code § 1916.7(b)(2); (8) Violation of Cal. Civ. Code § 1916.7(b)(2); (9) Violation of Cal. Civ. Code § 1916.7(a)(8); (10) Rescission; (11) Fraud – Cal. Civ. Code § 1572; (12) Unfair and Deceptive Business Practices (UDAP); (13) Breach of Fiduciary Duty; (14) Unconscionability – UCC-2-302; (15) Predatory Lending: Cal. Bus. & Prof. Code § 17200; and (16) Quiet Title.

- 4 -

On November 16, 2010, Plaintiffs filed the instant Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction in which they seek to enjoin the foreclosure sale scheduled for November 23, 2010.  Dkt. 4.  Thereafter, the parties stipulated to a briefing schedule and a motion hearing date of December 14, 2010, and to delay the sale date to no earlier than December 16, 2010.  Dkt. 10.  The parties' stipulation is tantamount to a stipulated temporary restraining order ("TRO").  Therefore, the Court construes and addresses Plaintiffs' motion as one for a preliminary injunction.

## II. LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376 (2008).  This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id.  This "clear showing" requires Plaintiffs to show more than a mere "possibility" of irreparable harm, but instead they must "demonstrate that irreparable injury is likely in the absence of an injunction."  Id. at 375 (emphasis in original); see Am. Trucking Ass'ns Inc. v. City of Los. Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).[2]

Prior to Winter, the Ninth Circuit applied a sliding scale approach whereby an injunction could be granted upon a "possibility" of irreparable harm if there nonetheless were "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1052-53 (9th Cir. 2010) (quoting Lands Council v. McNair, 537 F.3d 981, 986 (9th Cir.

---

[2] Plaintiffs' discussion of the legal standards applicable to TROs and preliminary injunctions relies on outdated and non-binding case authority, and omits any discussion of Winter or its progeny.  Perhaps even worse, Defendants' briefs contains no discussion whatsoever of any legal standards.  It is the parties' responsibility to properly brief matters for the Court's consideration.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."); Civ. L.R. 7-4(a)(5) (requiring briefs to be supported by "pertinent" legal authority).

2008) (en banc)).  The Supreme Court rejected that approach, and held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 129 S.Ct. at 375-76.

After Winter, Ninth Circuit followed the four-part Winter test without regard to the sliding scale approach.  See Am. Trucking Ass'ns, 559 F.3d at 1052 ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable."); Stormans Inc. v. Selecky, 571 F.3d 960, 977 (9th Cir. 2009) (interpreting Winter as holding that the sliding scale test was "too lenient"); Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849-50 (9th Cir. 2009) (applying Winter factors with no mention of the former sliding scale test).  More recently, however, the Ninth Circuit has clarified "that the 'serious questions' approach survives Winter when applied as part of the four-element Winter test." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010).  "Therefore, 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest."  Id.

### III. DISCUSSION

#### A.  SUCCESS ON THE MERITS

##### 1. Unpled Claims

As a threshold matter, the Court notes that Plaintiffs' purported showing of likelihood of success on the merits is based on two putative claims:  (1) violation of Cal. Civ. Code § 2932.5 and (2) violation of Cal. Civ. Code § 2923.6.  Pls.' Mot. at 8.  However, there are no claims alleged in the Complaint under either statute.[3]  On the caption page of the Complaint, "Violation of Cal. Civil Code § 2932.5" is identified as the ninth cause of action.  However, in the body of the Complaint, the ninth cause of action, which is

---

[3] The Court does not consider the likelihood of success of claims that are not briefed in Plaintiffs' motion.  See Indep. Towers of Wash., 350 F.3d at 929.

captioned "Violation of California Civil Code § 1916.7(a)(8)," makes no mention of § 2932.5. Compl. at 22. Rather, this claim challenges the legality of the prepayment penalty provision in the Note. See id. ¶¶ 105-108. In fact, neither § 2932.5 nor 2923.6 are referenced anywhere in the pleadings. It is axiomatic that a federal court cannot grant preliminary injunctive relief based on the success of a claim that is not alleged in the pleadings. On this basis alone, the Court finds that Plaintiffs have not met the requirements for preliminary injunctive relief. See Nichols v. Jacoby, Civil No. 08-1100-BR, 2009 WL 2410023 at *2 (D. Or. July 31, 2009) ("Plaintiff's Motion for Temporary Restraining Order contains allegations completely unrelated to the claims alleged in his Complaint.… As such, Plaintiff has shown neither any reasonable likelihood of success nor the possibility of irreparable injury").

### 2. California Civil Code § 2932.5

Even if Plaintiffs had alleged a claim under Cal. Civ. Code § 2932.5, they have failed to demonstrate that they would likely succeed on such a claim. This statute provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. <u>The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded</u>.

Cal. Civ. Code § 2932.5 (emphasis added).

Here, Plaintiffs contend that Sonoca has no enforceable right under the Note because "there is no evidence of a recorded assignment of the right to payment of money," as required by § 2932.5. Pls.' Mot. at 5. This contention lacks merit. "Section 2932.5 applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee." Selby v. Bank of Am., Inc., No. 09cv2079 BTM, 2010 WL 4347629 at *3 (S.D. Cal., Oct. 27, 2010); Roque v. Suntrust Mortg., Inc., No. C-09-00040 RMW, 2010 WL 546896 at *3 (N.D. Cal. Feb.10, 2010) ("Section 2932.5 applies to mortgages, not deeds of trust.") (Whyte, J.). Here, the Notice of Default and Election to Sell Under Deed of Trust is based on the right to foreclose contained in the Deed of Trust,

as opposed to the Note. Sowards Decl. Ex. 6. As such, whether or not Sonoca recorded the assignment of the Note is inapposite. In any event, Sonoca has proffered evidence purporting to show that the assignment transferring Kondaur's rights under the Deed of Trust to Sonoca was recorded on June 18, 2010. Sowards Decl. Ex. 5. Tellingly, Plaintiffs completely ignore this evidence in their reply.

### 3. California Civil Code § 2923.6

Cal. Civ. Code § 2923.6 provides, in relevant part:

> (a) <u>The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool</u>, or to all investors under a pooling and servicing agreement, <u>not to any particular party in the loan pool</u> or investor under a polling [footnote] and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:
>
> (1) The loan is in payment default, or payment default is reasonably foreseeable.
>
> (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
>
> (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.
>
> ….

Cal. Civ. Code § 2923.6 (emphasis added).

Plaintiffs contend that Sonoca has a duty under § 2923.6 to maximize the value of their loan, and that Sonoca will be in violation of this statute in the likely event that it sells Plaintiffs' home "for an amount less than a reasonable modification would recover…." Pls.' Mot. at 6. As an initial matter, Sonoca contends—and Plaintiffs do not dispute—that the Note was purchased as a stand alone investment, not part of a loan pool. Sowards Decl. ¶ 4. Thus, it is questionable whether § 2923.6 is applicable to the underlying transaction. But even if it were, § 2923.6 does not create a cause of action for borrowers. See <u>Quinteros v. Aurora Loan Servs.</u>, -- F. Supp. 2d. --, 2010 WL 3817541 at *9 (E.D. Cal. Sept. 30,

2010) ("[T]here is no private cause of action under Section 2923.6."); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1187-88 (N.D. Cal. 2009) (§ 2923.6 does not create a cause of action for borrower); Farner v. Countrywide Home Loans, 2009 WL 189025 at *2 (S.D. Cal. Jan. 26, 2009) ("[N]othing in Cal. Civ. Code § 2923.6 imposes a duty on servicers of loans to modify the terms of loans or creates a private right of action for borrowers."). Accordingly, even if Plaintiffs had alleged a claim under § 2923.6, such a claim would lack merit.

### B.   IRREPARABLE HARM

The loss of one's home through foreclosure generally is considered sufficient to establish irreparable harm. Gonzalez v. Wells Fargo Bank, No. C 09-03444 MHP, 2009 WL 3572118 at *3 (N.D. Cal., Oct. 30, 2009) ("The possible irreparable harm that [plaintiff] would suffer if his home is sold at foreclosure is obviously high."); Mesde v. Am. Brokers Conduit, No. C 09-02418 JF, 2009 WL 1883706. at *2 (N.D. Cal., June 30, 2009) (holding that foreclosure constitutes irreparable harm when the lender did not offer the borrower any alternatives to foreclosure) (Fogel, J.); see also Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1988) (no adequate remedy at law because of the unique nature of real property). The balance of hardships tips in favor of Plaintiffs because there home will be foreclosed upon if an injunction does not issue. In contrast, Sonoca will suffer no serious hardship as their security in the home will remain.

Although the foreclosure of Plaintiffs' home may result in irreparable harm and the balance of hardships weigh in their favor, the Court finds that a preliminary injunction is not warranted, given their failure to establish any likelihood of success on the merits. "When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure." Perry v. National Default Servicing Corp., No. 10-CV-03167-LHK, 2010 WL 3325623 at *6 (N.D. Cal., Aug. 20, 2010) (declining to enjoin foreclosure based on Winter factors); Gonzalez, 2009 WL 3572118 at *7 (denying preliminary injunction to enjoin foreclosure sale where plaintiff's probability of succeeding "is so low, that even though

[plaintiff] would suffer irreparable harm, he has not met the standard for the granting of a preliminary injunction"); Mesde, 2009 WL 1883706 at *2 (same).

## IV.  CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiffs' motion for TRO and preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated:  December 15, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge