UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MELVIN L. WASHINGTON, an individual, and MASUMI WASHINGTON, an individual,<br><br>            Plaintiffs,<br><br>      vs.<br><br>NATIONAL CITY MORTGAGE COMPANY, an Ohio Corporation; PNC BANK, NATIONAL ASSOCIATION, a Pennsylvania Association; KONDAUR CAPITAL CORPORATION, a California corporation; FCI LENDERS SERVICES, INC., a California Corporation; SONOCA ONE, a California Limited Liability Company; WACHTER INVESTMENTS INC., a California Corporation; RICHARD B. WACHTER, an individual; BRIAN E. ROONEY, an individual; GREGORY G. STEIGER, an individual; JOANNE STEIGER, an individual; and DOES 1-100, inclusive,<br><br>            Defendants. | Case No:  C 10-5042 SBA<br><br>**ORDER**<br><br>Dkt. 12, 15, 20, 26, 27 |

Homeowners Melvin and Masumi Washington allege that they were defrauded by their lenders in connection with two loans they obtained to finance their home in San Francisco, California.  On November 8, 2010, Plaintiffs filed the instant action in this Court, alleging sixteen claims for relief against numerous lenders and their assignees.  The Court has original jurisdiction, 28 U.S.C. § 1331, over Plaintiffs' federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and supplemental jurisdiction, 28 U.S.C. § 1367, with respect to the remaining state law causes of action.

All Defendants have filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and certain Defendants have filed ancillary motions for a more definite statement under Rule 12(e) and to strike under Rule 12(f).  Dkt. 12, 15, 20, 26, 27.  Having read and considered the record and the papers submitted by the parties, the Court GRANTS Defendants' motions to dismiss as to Plaintiffs' TILA and RESPA claims, which are DISMISSED without leave to amend, and DENIES the pending motions in all other respects.  The Court declines to assert supplemental jurisdiction over the remaining state law causes of action and dismisses them without prejudice.  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court adjudicates the motions without oral argument.

## I.   BACKGROUND

### A.   FACTUAL SUMMARY

#### 1.   First Loan

On October 26, 2004, Plaintiffs obtained a construction loan ("First Loan") from National City Mortgage Company[1] ("National"), in the amount of $485,000 to construct a home at 96 Alpha Street, San Francisco, California ("the Property").  Id. ¶ 13 & Ex. A, Dkt. 1.  This transaction is memorialized in an Adjustable Rate Note ("the Note"), which specified that the interest rate for the first 36 months (referred to as the "Interest Only Period") would remain fixed at 5.75% for 36 months with monthly payments of $2,323.96.  Id. Ex. A at 1.  After the expiration of the Interest Only Period, i.e., July 1, 2008, Plaintiffs were to begin paying both principal and interest.  Id.  The interest rate became variable, based on the 12-month LIBOR (London Interbank Offered Rate) index, plus 2.25%.  Id. at 2.

The Note included a Construction/Permanent Addendum to Adjustable Rate Note ("Addendum").  Compl. Ex. A.  The Addendum indicated that the deadline for completing construction was June 13, 2005, and that within thirty days of that date, Plaintiffs could

---

[1] National has since been merged into PNC Bank, National Association ("PNC").

"lock in" the current interest rate.  Id.  The Addendum further provided that "upon completion of the Improvements, Borrower will execute a Modification Agreement…. Should the Modification Agreement not be executed for any reason, the interest rate on unpaid principal being charged shall be increased to the higher of the Capped Rate as defined in the Capped Rate Floating Rate Agreement or 11.75%."  Id.

### 2.   The Second Loan

On August 8, 2007, Plaintiffs obtained a separate loan ("Second Loan") from Wachter Investments, Inc. ("Wachter") in the amount of $280,000, which, like the First Loan, was secured by the Property.  Id. ¶ 16 and Exs. C, D.  Plaintiffs used the loan proceeds to pay off an earlier Wachter loan, to make late payments on their National loan, to pay closing costs, and to pay contractors for work they had already performed.  Id. ¶ 17.[2] Based on an annual interest rate of 12%, Plaintiffs' monthly payments were $2,800 per month.  Id. ¶ 19.  At the end of the 20-year term, a final balloon payment of $280,000 became due.  Id.  On a date not specified in the pleadings, Wachter subsequently sold the loan to three individuals, Brian E. Rooney, Gregory G. Steiger and Joanne Steiger.  Id. ¶ 18; Kondaur Request for Judicial Notice Ex. 8, Dkt. 15-1.

### 3.   Modification to the First Loan

On March 2, 2008, Plaintiffs received a letter from National congratulating them on the completion of their home, and informing them that the Note required "'the execution of a Loan Modification Agreement because [their] loan terms have changed since [their] original closing.'"  Compl. ¶ 20.  National's letter warned Plaintiffs that if they did not execute the loan modification, their loan "'may start the Revert process in which [their] loan will be defaulted and will be set up at the default rate of 11.75%.'"  Id.  Plaintiffs advised National that they could not afford such a high interest rate, and that they wanted to maintain the original terms of the Note.  Id.  National responded that Plaintiffs' only options were to either agree to a two-year balloon loan or be foreclosed upon.  Id.  Seeing

---

[2] The Complaint makes reference to, but provides no details concerning, a prior Wachter loan.

no choice, Plaintiffs agreed to the loan modification.  Id.  Plaintiffs subsequently requested that National reverse the modification so that they could obtain a 30-year fixed loan, but were told that their loan was packaged and would be easier to sell with the shorter terms. Id.

On June 16, 2008, Plaintiffs executed a Loan Modification Agreement ("Modification"), which was deemed effective as of February 21, 2008.  Id. ¶ 20; Sowards Decl. Ex. 3, Dkt. 11-1.[3]  Under the terms of the Modification, the interest rate became subject to adjustment as of May 1, 2008, based on "the Prime Rate as published by the Wall Street Journal[.]"  Sowards Decl. Ex. 3 § 4.  The Modification further specified that the full amount of the unpaid principal, $483,500, would be due and payable on the Maturity Date of March 10, 2010.  Id. § 3(A).

### 4.    First Loan Sold by National

In September 2008, Plaintiffs were notified that their Note had been sold to Kondaur Capital Corporation ("Kondaur"), and were instructed to make their mortgage payments to Kondaur.  Compl. ¶ 21.  A few months later in January 2009, Plaintiffs received a letter from Kondaur informing them that it had been assigned the ownership and servicing rights under the Note.  Id. ¶ 22.

On or about September 17, 2009, Plaintiffs received a Notice of Assignment, Sale or Transfer of Servicing Rights letter from Kondaur informing them that effective October 3, 2009, all mortgage payments were to be made to FCI Lender Services, Inc. ("FCI"), in Anaheim, California.  Id. ¶ 27.  Plaintiffs received a similar letter from FCI on or about October 9, 2009.  Id. ¶ 28.  In December 2009, FCI informed Plaintiff that Sonoca One ("Sonoca") now owned their Note.  Id. ¶ 29.  Plaintiffs have since defaulted on both loans.

---

[3] Although Plaintiffs did not attach a copy of the Modification to the Complaint, a copy of the agreement was previously filed in this action.  See Dkt. 11-1.  Because the Complaint specifically references the Modification, and the authenticity of the copy on file has not been questioned, the Court may properly take judicial notice of said document.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (noting that under the "incorporation by reference" doctrine, courts are permitted to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleading.").

1

   **B.** **PROCEDURAL HISTORY**

2

      **1.** **Pleadings and Prior Proceedings**

3

On November 8, 2010, Plaintiffs filed a Complaint in this Court against National,

4

Kondaur, Sonoca, FCI, Wachter, Richard B. Wachter, Brian E. Rooney, Gregory G. Steiger

5

and Joanne Steiger based on their allegedly unlawful, fraudulent and unfair predatory real

6

estate practices.  The Complaint alleges sixteen causes of action, styled as follows:

7

(1) Declaratory Relief; (2) Injunctive Relief; (3) Determine Nature, Extent and Validity of

8

Lien under Cal. Comm. Code § 9313; (4) Contractual Breach of the Implied Covenant of

9

Good Faith and Fair Dealing; (5) Violation of TILA; (6) Violation of RESPA; (7) Violation

10

of Cal. Civ. Code §§ 1918.5-1921.1920; (8) Violation of Cal. Civ. Code § 1916.7(b)(2);

11

(8) Violation of Cal. Civ. Code § 1916.7(b)(2); (9) Violation of Cal. Civ. Code

12

§ 1916.7(a)(8); (10) Rescission; (11) Fraud – Cal. Civ. Code § 1572; (12) Unfair and

13

Deceptive Business Practices (UDAP); (13) Breach of Fiduciary Duty;

14

(14) Unconscionability – UCC-2-302; (15) Predatory Lending: Cal. Bus. & Prof. Code

15

§ 17200; and (16) Quiet Title.

16

On November 16, 2010, Plaintiffs filed an Ex Parte Motion for Temporary

17

Restraining Order and Preliminary Injunction in which they sought to enjoin the foreclosure

18

sale scheduled for November 23, 2010.  Dkt. 4.  Thereafter, the parties stipulated to a

19

briefing schedule and a motion hearing date of December 14, 2010, and to delay the sale

20

date to no earlier than December 16, 2010.  Dkt. 10.  Based on the parties' stipulation, the

21

Court construed Plaintiff's motion as a request for a preliminary injunction.  On December

22

10, 2010, the Court issued its ruling denying Plaintiffs' motion.  Dkt. 14; <u>Washington v.</u>

23

<u>Nat'l City Mortg. Co.</u>, No. C 10-5042 SBA, 2010 WL 211506 (Dec. 16, 2010).  The

24

Property was foreclosed upon on February 4, 2011.  <u>See</u> PNC Request for Judicial Notice,

25

Ex. A, Dkt. 28.

26

      **2.** **Motions Pending Before the Court**

27

Defendants separately have filed motions to dismiss for failure to state a claim under

28

Rule 12(b)(6) and ancillary Rule 12 motions, as follows:

1.      Defendants Sonoca and FCI's motion to dismiss for failure to state a claim and for a more definite statement, Dkt. 12;

2.      Kondaur's motion to dismiss for failure to state a claim, Dkt. 15;

3.      Wachter, Richard B. Wachter, Brian E. Rooney, Gregory G. Steiger and Joanne Steiger's motion to dismiss for failure to state a clam and for a more definite statement, Dkt. 20; and

4.      PNC's motion to dismiss for failure to state a claim and separate motion to strike, Dkt. 26 and 27.

Plaintiffs have filed oppositions to all of Defendants' motions, except the motion filed by Kondaur.  See Dkt. 18, 20 and 29.  Because the issues and arguments presented in the motion papers overlap, the Court analyzes the motions collectively.

## II.   LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Although a court generally is confined to the pleadings on a motion to dismiss, "[a] court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile.  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087–88 (9th Cir. 2002).

III.    **DISCUSSION**

      A.    **TILA CLAIM**

      Plaintiffs' fifth cause of action alleges that National and Wachter violated TILA by: (1) failing to provide Plaintiffs with a correct payment schedule, a properly disclosed interest rate, an accurate Good Faith Estimate, a disclosure relating to Property/Hazard Insurance and a copy of the "Consumer Handbook on Adjustable Rate Mortgages"; (2) failing to warn Plaintiffs that their loan was "volatile"; and (3) not including in the TILA disclosures that the loan included a prepayment penalty.  Id. ¶¶ 75-79.  As relief, Plaintiffs seek rescission, damages, restitution and punitive damages.  Id. ¶¶ 80-83. Plaintiffs purport to allege this claim against all Defendants.

      1.    **Overview of TILA**

      The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a); Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009).  The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, (1998).  TILA also requires the lender to disclose to borrowers their right to rescind or cancel a transaction.  See 15 U.S.C. §§ 1635, 1638; 12 C.F.R. § 226.23(b)(1).  TILA claims are cognizable against creditors, 15 U.S.C. § 1640(a), and assignees of creditors, 15 U.S.C § 1641(a).

      TILA provides borrowers with two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635(a); and (2) damages, 15 U.S.C. § 1640.  In credit transactions involving the borrower's principle dwelling, the borrower has the right to rescind the transaction up to midnight of the third business day following the consummation of a loan transaction.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a).  If the lender fails to provide a notice of the right to rescind or the disclosures required by TILA, the time limit for rescission is extended to "three years after the date of consummation of

the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C.
§ 1635(f); 12 C.F.R. § 226.23(a)(3); see Miguel v. Country Funding Corp., 309 F.3d 1161,
1163 (9th Cir. 2002).  In contrast, an action for damages under TILA must be commenced
within one year of the occurrence of the violation.  15 U.S.C. § 1640(e).  A TILA claim
accrues on the date the loan closes.  Meyer v. Ameriquest Mortg. Co., 342 F.3d 899,
902 (9th Cir. 2003) ("The failure to make the required [TILA] disclosures occurred, if at
all, at the time the loan documents were signed.").

### 2.    Rescission

Plaintiffs seek rescission under TILA with respect to both the First and Second
Loans.  With regard to the First Loan, rescission is not an available remedy.  TILA provides
that "a residential mortgage transaction," as defined in 15 U.S.C. § 1602(w), is not subject
to rescission.  15 U.S.C. § 1635(e).  Section 1602(w) defines "residential mortgage
transaction" to mean "a transaction in which a mortgage, deed of trust, purchase money
security interest arising under an installment sales contract, or equivalent consensual
security interest is created or retained against the consumer's dwelling to finance the
acquisition or initial construction of such dwelling."  Id. § 1602(a) (emphasis added).  Since
Plaintiffs have expressly alleged that the First Loan was to construct their home, Compl.
¶ 13, they are precluded from seeking rescission under TILA.  See, e.g., Yazdanpanah v.
Sacramento Valley Mortg. Group, No. C 09-2024 SBA, 2009 WL 4573381, at *6 (N.D.
Cal. Dec. 1, 2009) (rescission under 15 U.S.C. § 1635 inapplicable to purchase money
mortgages) (Armstrong, J.).

Tacitly admitting TILA's inapplicability to the First Loan, Plaintiffs contend in their
opposition to PNC's motion to dismiss that their claim in actuality is based on the 2008
Modification as opposed to the First Loan, as originated.  Pl.'s Opp'n to PNC Mot. at 9,
Dkt. 29.  Without citation to any legal authority, Plaintiffs summarily assert that unlike a
purchase money loan, a loan modification is subject to TILA.  Id.  However, TILA's
disclosure requirements are not applicable to the Modification because it did not constitute
either an extension of new credit or a refinancing.  Rather, the Modification altered the

1  interest rate and the maturity date applicable to the First Loan.  Consequently, the

2  Modification is outside the purview of TILA.  <u>See De Jose v. EMC Mortg. Corp.</u>, No. C

3  11-00139 JCS, 2011 WL 1539656, at *7 (N.D. Cal. April 19, 2011) ("TILA disclosure

4  requirements do not apply to forbearance or loan modification agreements that simply

5  reduce the interest rate and payment schedule of a loan"); <u>Park v. National City Mortg.</u>

6  <u>Bank</u>, No. 10cv2408 DMS (RBB), 2011 WL 805940, at *3 (S.D. Cal. March 1, 2011)

7  ("TILA does not apply to loan modifications").

8        Plaintiffs' claim for rescission of the Second Loan fares no better.  "Under § 1635(f)

9  of the [TILA] statute, [the] right of rescission 'shall expire' in the usual case three years

10  after the loan closes or upon the sale of the secured property, whichever date is earlier."

11  <u>Beach</u>, 523 U.S. at 411.  The Second Loan closed on August 8, 2007.  Compl. ¶ 16.

12  However, Plaintiffs did not file suit until more than three years later on November 10,

13  2010.  Plaintiffs argue that statute should be equitably tolled.  However, equitable tolling

14  does not apply to rescission under this provision of TILA, because "§ 1635(f) completely

15  extinguishes the right of rescission at the end of the 3-year period," even if the lender has

16  never made the required disclosures.  <u>Id.</u> at 412; <u>accord In re Cmty. Bank of N. Vir.</u>, 622

17  F.3d 275, 301 n.18 (3d Cir. 2010); <u>D'Onofrio v. U.S. Bank</u>, No. C 09-3701 CRB, 2009 WL

18  3298237, at *2 (N.D. Cal. Oct. 13, 2009) (Breyer, J.).[4]  Because no amendment can cure

19  these deficiencies, Plaintiffs' TILA claim for rescission is DISMISSED without leave to

20  amend.

21                **3.**      **Damages**

22        As noted, claims for damages based on TILA disclosure violations must be filed

23  within one year from the date of loan.  <u>See King v. California</u>, 784 F.2d 910, 915 (9th Cir.

24  1986) ("the limitations period in [the TILA] runs from the date of consummation of the

25  transaction....").  Here, Plaintiffs concede that they filed their Complaint well more than a

26  year after both the First and Second Loan closed, but argue that their claim is subject to

27  _____

28      [4] For the same reasons, Plaintiffs' claim for rescission based on the First Loan also is
time-barred.

equitable tolling.  In the context of a TILA damages claim, equitable tolling can "suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the ... action."  <u>King</u>, 784 F.2d at 915.  The salient question is whether "the TILA violations alleged could … have been discovered by due diligence during the one-year statutory period[.]"  <u>Lingad v. Indymac Federal Bank</u>, 682 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010).

Here, Plaintiffs allege that they "did not have any reason to question Defendants' motives or tactics until things began to go wrong."  Pl.'s Opp'n to Sonoca Mot. at 8, Dkt. 18.  In addition, Plaintiffs assert that they "were unable to discover Defendant's unlawful conduct until they had hired an attorney and the attorney conducted a loan audit" and that they "immediately filed suit" after the attorney completed such audit.  Pls.' Opp'n to Wachter Mot. at 6-7, Dkt. 24; Pl.'s Opp'n to PNC Mot. at 4, Dkt. 29.  Yet, Plaintiffs do not contend in any of their three opposition briefs that there was any impediment to their ability to discover the alleged TILA violations within the one year period following the consummation of either loan.  To the contrary, the alleged errors and omissions of which Plaintiffs now complain could have been ascertained by "comparing the loan contract, [Defendants]' initial disclosures, and TILA's statutory and regulatory requirements."  <u>Hubbard v. Fidelity Federal Bank,</u> 91 F.3d 75, 79 (9th Cir. 1996) (equitable tolling inapplicable where borrowers could have learned of TILA issues by reviewing their loan documents); <u>Meyer</u>, 342 F.3d at 902-903 (holding that equitable tolling was inapplicable to TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).  Accordingly, the Court finds no basis upon which to equitably toll the statute of limitations applicable to Plaintiffs' claim for damages under TILA.  Given the untenable basis of Plaintiffs' claim for equitable tolling, the Court DISMISSES Plaintiffs' TILA claim for damages, without leave to amend.

**B.    RESPA CLAIM**

Plaintiffs' sixth cause of action alleges violations of RESPA by all Defendants. Congress enacted RESPA to shield home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a).  The purpose of RESPA was to effect certain changes in the settlement process that will result, inter alia, "in more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(1), (2).  Section 8(a) of RESPA prohibits the giving or accepting of any "fee, kickback, or thing of value" in exchange for referrals of federally related mortgage loans.  Id. § 2607(a).  Section 8(b) prohibits the giving or accepting of "any portion, split, or percentage" of unearned fees.  Id. § 2607(b).

RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f).   Patague v. Wells Fargo Bank, N.A., No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010) (Armstrong, J.).  Claims brought under § 2607 or 2608 are subject to a one-year statute of limitation, while claims under § 2605 are governed by a three-year statute of limitations, which commence to run when the violation occurs. 12 U.S.C. § 2614; Snow v. First Am. Title Ins. Comp., 332 F.3d 356, 359 (5th Cir. 2003) (RESPA claim accrues at closing).

There are three components to Plaintiffs' RESPA claim.  First, in an apparent attempt to state a claim for violation of RESPA § 8, the Complaint alleges that Defendants violated RESPA by charging "excessive" fees in connection with the First and Second Loans.  See Compl. ¶¶ 87, 88.  A claim for "excessive" fees, however, is not actionable under § 2607.  See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 554 (9th Cir. 2010) ("We join our sister circuits in holding that the text of Section 8(b) is unambiguous

and does not extend to overcharges . . . .").  Tellingly, Plaintiffs fail to address <u>Martinez</u> in their opposition, notwithstanding the fact that it is directly on point.  But even if this claim were actionable, it is untimely.  Any violation of RESPA occurred when the fees were charged at closing in 2004 and 2007.  <u>See</u> <u>Snow</u>, 332 F.3d at 359.  Since Plaintiffs did not file suit until 2010, their claim is barred by the applicable one-year statute of limitations. <u>See</u> 12 U.S.C. § 2614.  Plaintiffs' claim of equitable tolling fails for the reasons articulated <u>supra</u>.

Next, Plaintiffs allege that Defendants failed to disclose "affiliated business arrangements as required by 24 C.F.R. § 3500.15 and RESPA."  Compl. ¶ 89.  As noted, RESPA § 8 prohibits kickbacks and referral fees.  <u>See</u> <u>Edwards v. First Am. Corp.</u>, 610 F.3d 514, 517 (9th Cir. 2010).   However, RESPA creates an exception for affiliated business arrangements which meet the requirements set forth in RESPA § 8(c)(4).  <u>See</u> 12 U.S.C. § 2607(c)(4); <u>see also</u> 24 C.F.R. § 3500.15 ("[a]n affiliated business arrangement is not a violation of section 8 of RESPA (12 U.S.C. 2607) and of § 3500.14 if the conditions set forth in this section are satisfied.").  An affiliated business arrangement must be disclosed to the person seeking settlement services.  <u>See</u> 12 U.S.C. § 2607(c)(4)(A) (requiring that "a disclosure is made of the existence of such an arrangement to the person being referred"); 24 C.F.R. § 3500.15(b)(1) (specifying contents of the disclosure).

Accepting the truth of Plaintiffs' allegations that Defendants violated 24 C.F.R. § 3500.15, the Court finds that this claim fails as a matter of law.  Plaintiffs have cited no legal authority nor has the Court been able to locate any cases holding that a violation of § 3500.15 or RESPA § 8(c)(4), standing alone, is actionable.  To the contrary, these provisions merely provide a safe harbor for properly disclosed affiliated business arrangements from liability for violations of § 8(a) or (b) of RESPA.  In other words, an affiliated business arrangement which fails to comport with the requisite disclosure requirements remains liable for violations of RESPA's proscription on kickback and referral fees.  Here, Defendants' alleged failure to comply with 24 C.F.R. § 3500.15(b)(1) simply would mean that they could be exposed to liability for violations of  RESPA § 8(a)

1   or (b).  However, as discussed above, any claim based on § 8(a) or (b) is time-barred.  <u>See</u>

2   12 U.S.C. § 2614.  Because no amendment could cure the aforementioned deficiencies,

3   Plaintiffs' RESPA claim is DISMISSED without leave to amend.

4        Finally, Plaintiffs allege that Defendants violated RESPA by failing to provide a

5   HUD-1 statement at closing "as required by 24 C.F.R. § 3500.8(b) and RESPA," <u>id.</u> ¶¶ 89-

6   90.  "The HUD-1 Settlement Statement is a standard form that must be used for the

7   statement of settlement costs in every federally related mortgage loan."  <u>Martinez</u>, 598 F.3d

8   at 557 (citing 12 U.S.C. § 2603(a) and 24 C.F.R. § 3500.8(a)).  The obligation to provide a

9   borrower with a HUD-1 statement arises from RESPA § 4, 12 U.S.C. § 2603, which does

10   not create a private right of action.  <u>Id.</u>; <u>Bloom v. Martin</u>, 865 F. Supp. 1377, 1385 (N.D.

11   Cal. 1994), <u>aff'd</u>, 77 F.3d 318 (9th Cir. 1996).  But even if it did, such a claim would be

12   time-barred for the same reasons articulated above.

13      **C.**    **SUPPLEMENTAL STATE LAW CAUSES OF ACTION**

14        All of Plaintiffs' remaining claims are based on state law.  When the federal claims

15   that served as the basis for jurisdiction are eliminated, either through dismissal by the court

16   or by a plaintiff amending his or her complaint, federal courts may decline to assert

17   supplemental jurisdiction over the remaining state law causes of action.  <u>See</u> 28 U.S.C.

18   § 1367(c)(3); <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1997) (court may

19   sua sponte exercise its discretion and dismiss state law claims under 28 U.S.C. § 1367(c)).

20   Given the lack of any remaining federal claims, coupled with the early stage of the

21   litigation, the Court exercises its discretion and dismisses Plaintiffs' state law causes of

22   action without prejudice to submitting such claims in a state court action.  <u>See</u> <u>Carnegie-</u>

23   <u>Mellon Univ. v. Cohill</u>, 484 U.S. 343, 351(1988) ("When the single federal-law claim in

24   the action was eliminated at an early stage of the litigation, the District Court had a

25   powerful reason to choose not to continue to exercise jurisdiction."); <u>cf.</u> <u>Harrell v. 20th</u>

26   <u>Century Ins. Co.</u>, 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district

27   court to remand remaining pendant claims to state court.").

28   //

1    //

2    //

3    **IV.     CONCLUSION**

4          For the reasons stated above,

5          IT IS HEREBY ORDERED THAT:

6          1.      Defendants' respective motions to dismiss are GRANTED IN PART and

7    DENIED IN PART.

8          2.      The motions to dismiss are GRANTED with respect to Plaintiffs' fifth claim

9    under TILA and sixth claim under RESPA, which are dismissed without leave to amend.

10         3.      The Court exercises its discretion and declines to assert supplemental

11   jurisdiction over the remaining state law causes of action, which are DISMISSED without

12   prejudice to presenting said claims in state court action.

13         4.      Based on the Court's decision to decline to assert supplemental jurisdiction as

14   to Plaintiffs' state law causes of action, the remaining motions are DENIED AS MOOT.

15         5.      The Clerk shall close the file and terminate any pending matters.

16         IT IS SO ORDERED.

17   Dated:  May 13, 2011

                                          _Saundra B Armstrong_
18                                        SAUNDRA BROWN ARMSTRONG
                                          United States District Judge
19

20

21

22

23

24

25

26

27

28